[Sac. No. 1037. In Bank.—March 8, 1904.]

## J. H. GLIDE, Appellant, v. MICHAEL KAYSER, Respondent.

CLAIM AND DELIVERY — CATTLE — CROSS-COMPLAINT — COUNTERCLAIM—
TRESPASS UPON REAL PROPERTY—INJURY TO CROPS.—In an action
of claim and delivery, to recover the possession of certain cattle, of
which plaintiff took possession at the time of the commencement of
the action, the defendant cannot by way of cross-complaint or
counterclaim recover damages to his real property committed by
the cattle by unlawful entry and trespass and injury to crops
growing thereupon.

ID.—"TRANSACTION"—MEANING OF CODE—INDEPENDENT RELIEF NOT IN-
TENDED.—The word "transaction," used in sections 438 and 442
of the Code of Civil Procedure, whatever it may signify, is not
intended to include a case where the counterclaim or cross-complaint
has no connection with the relief asked for by the plaintiff, but is
of a different nature, and where to grant the relief asked for by the
defendant would require two separate and distinct judgments.

APPEAL from a judgment of the Superior Court of Yolo
County and from an order denying a new trial. E. E. Gaddis,
Judge.

The facts are stated in the opinion of the court.

A. C. Huston, and A. L. Shinn, for Appellant.

Charles O. Busick, and R. Clark, for Respondent.

McFARLAND, J.—This is an action—which at common
law would have been called replevin—to recover the possession
of certain cattle. At the commencement of the action plain-
tiff took possession of the property under the provisions of
the Code of Civil Procedure called "Claim and Delivery."
Defendant answered, denying generally the averments of the
complaint, and asserting a certain lien on the property, but
he did not ask for a return of the cattle or the enforcement
of the asserted lien; he merely prayed for a dismissal of the
action and costs. But he also filed a cross-complaint in which
he averred that he was in possession of certain land, and that
the cattle had unlawfully entered and trespassed upon the
said land, and trampled upon and ate and destroyed the

crops growing thereon, to his damage in the sum of three
thousand five hundred dollars; and he prayed judgment
against plaintiff for that sum of money. Plaintiff demurred
to the cross-complaint on the ground that it did not contain
proper subject-matter for a cross-complaint, etc., and made a
motion to strike it out; but the court overruled the demurrer
and denied the motion. The defendant introduced evidence
tending to show damage done to his land as aforesaid, and the
jury returned a verdict on the cross-complaint of one hun-
dred and fifty dollars; and a judgment was rendered that
defendant recover of plaintiff the said one hundred and fifty
dollars and costs. Plaintiff appeals from the judgment and
from an order denying his motion for a new trial. The main
question in the case is whether or not the demurrer to the
cross-complaint should have been sustained; and as, in our
opinion, it was error to overrule said demurrer, it is not
necessary to consider the other points made by appellant.

The provisions of our code (Code Civ. Proc., secs. 438,
442) as to counterclaims and cross-complaints are no doubt
quite liberal, although not more than those of New York and
other states. But we have been referred to no case where it
has been held that to a complaint for the recovery of per-
sonal property there may be properly pleaded a counterclaim
or cross-complaint founded upon damage to real property.
It is not necessary here to attempt a full definition of the
word "transaction" as used in our code, although there is
much authority to support the definition given in Abbott's
Law Dictionary (vol. 2, p. 590), which is as follows: "The
term 'transaction' in a statute limiting counterclaims to de-
mands arising out of the same transaction, intends some com-
mercial or business negotiation, and not a wrong of violence
or fraud." But it is not necessary for us to go that far in
this case. In an action founded on tort the facts might per-
haps be of such peculiar character that a counterclaim or
cross-complaint would lie on the theory that the alleged tort
was a "transaction" within the meaning of the code. There
is not much authority on the subject to be found in the de-
cisions of this court, although *Hoffman* v. *Remnant,* 72 Cal.
1, and *Meyer* v. *Quiggle,* 140 Cal. 495, are to a considerable
extent in point. In *Meyer* v. *Quiggle* the action was to quiet
title to land, but as to the question here under discussion the

principle there announced would seem to equally apply to an action for personal property. In that case the court held that in an action to quiet title to land a cross-complaint in which a judgment was asked against plaintiff for damages for breach of an alleged contract between the parties, by which the defendant was to be paid for digging wells on the land, would not lie, and that the matter set up in the cross-complaint was not embraced by the provisions of either section 438 or 442 of the code. With respect to the case made by the complaint and the case set up by the cross-complaint in that action the court says: ''The two cases have no relation to each other. The relief to which he would be entitled upon the one claim would not affect, modify, or change in any way the decree to which the other party would be entitled.'' This language applies to the case at bar; here a judgment in favor of plaintiff for the possession of the cattle would in no way be affected by a judgment against him in favor of defendant for damages to his land; the two judgments would be entirely separate and distinct. It would lead to great confusion to sanction a cross-complaint in a case where, upon proof of the averments of both the complaint and cross-complaint, one single judgment could not be rendered in favor of one of the parties and against the other. In *Meyer* v. *Quiggle* it was said: ''It was not the intention of the reformed procedure to allow persons having independent claims against each other the relief authorized in one having no relation to that which could be given in the other, nor in any manner affecting it, to settle them all in one action upon the sole ground that, as they had been brought into court to contend against each other with respect to one case or dispute, they should at that time and place settle all other matters of controversy existing between them.''

The subject of counterclaims and cross-complaints under the code system is quite fully discussed and many authorities cited in Bliss on Code Pleadings, 3d ed., secs. 386 et seq., and Pomeroy's Code Remedies, secs. 745, 767, 775, 791, 793. (See, also, *Barhyte* v. *Hughes,* 33 Barb. 320, and *National Fire Ins. Co.* v. *McKay,* 21 N. Y. 191.) We think that the law governing the case at bar, upon both authority and reason, is correctly stated in section 767 of Pomeroy's Code Remedies as follows: ''It would seem that, in an action to recover the possession of

specific chattels, no counterclaim is possible, unless, perhaps, equitable relief may be awarded under some very exceptional circumstances. A judgment for a return to the defendant of the chattels in controversy is not a counterclaim, for it is expressly provided for by the codes, the very issue in the action being which party is entitled to the possession, and the court by its judgment awarding the possession, or the value in money if possession cannot be given, to the one who establishes the right; if, therefore, the plaintiff had taken the goods into his own custody by the authorized preliminary proceedings, they or their value must be restored when the action fails. If a counterclaim can be interposed in this suit, it must be either (1) a demand for money, or (2) a demand for the possession of certain other and different chattels, or (3) a demand for some kind of equitable relief. A counterclaim for money could not be admitted under the principle established by the cases, that the relief must have *some* connection with that asked for by the plaintiff, and must tend to diminish or modify it in some manner. A judgment for money obtained by the defendant could not interfere with or be *counter* to a judgment awarding possession of chattels to the plaintiff. The same difficulties attend the second alternative. It seems impossible that when the plaintiff seeks to recover possession of certain specific chattels the defendant's right to the possession of other and distinct articles could arise out of the same transaction which is the foundation of the plaintiff's claim or could be connected with the subject of the plaintiff's action. The 'transactions,' which are the foundations of their respective causes of actions, must, from the very nature of the case, be different. It is not pretended that the action, or the cross-demand, is based upon contract. And, finally, the relief granted to the defendant would be entirely independent of that conferred upon the plaintiff; the two would be complete and entire each by itself, and thus there would be in effect two judgments, not modifying or interfering with each other, and not relating to the same subject-matter. This reasoning and the conclusion reached by it have been sustained by judicial decision, and thus seem to be supported alike by principle and by authority. It is possible, perhaps, though hardly probable, that equitable relief may, under certain exceptional circumstances, be recov-

erable by the defendant in an action similar in its nature and object to the ancient replevin or detinue. Courts of equity, however, very rarely interfered in controversies concerning the title to and possession of chattels.''

The judgment and order appealed from are reversed.

Lorigan, J., and Henshaw, J., concurred.