[Civ. No. 38198. Second Dist., Div. Five. Feb. 22, 1972.]

Estate of JOHN E. CUMMINGS, Deceased.
RONALD LYNN CUMMINGS, as Co-administrator With the Will
Annexed, etc., et al., Petitioners and Respondents, v.
D. P. COVERT, Petitioner and Appellant.

618

## COUNSEL

D. P. Covert, in pro. per., for Petitioner and Appellant.

Kindel & Anderson, Keith A. Pursel, William B. Finestone, Norman & Lilly and Lawrence Norman for Petitioners and Respondents.

## OPINION

AISO, J.—D. P. Covert appeals from an order appointing respondent Ronald Lynn Cummings, son of the testator, and respondent N. Cherilyn Hathaway, step-daughter of the testator, co-administrators with the will annexed of the Estate of John E. Cummings, Deceased, and denying his petition for letters of administration with the will annexed.

John E. Cummings died in 1961, leaving a widow, Nancy C. Cummings, and several children. Nancy, now deceased, is the mother of N. Cherilyn Hathaway. Cherilyn is not related to John nor a beneficiary under his will, but she is a primary beneficiary of the will of Nancy. Ronald is John's son by a previous marriage. John's will and codicils disposed of the probate estate to Nancy and Ronald and named Ronald as executor. He qualified and served as such for about three years.

On his deathbed, John made gifts in contemplation of death valued at $416,137.20 to Ronald, Ronald's wife, and to another daughter. After appointment as executor, Ronald petitioned the trial court for instructions concerning collection of reimbursements for federal and state estate, inheritance, and gift taxes paid by the estate on property, including the gifts made in contemplation of death. The trial court held the donees of the gifts were liable to the estate for these taxes. Ronald filed an appeal from this order and it was at this time that all parties concerned, including the trial court judge, agreed that a conflict of interest existed and that Ronald should resign.

The appellate court held that the donor or his estate is liable for the federal and state gift taxes. However, it assumed that after the estate paid the estate tax, "the executor may recover from the donees of the gifts made in contemplation of death a sum equal to that portion of the total estate taxes that resulted from the making of such gifts." (*Estate of Cummings* (1965) 236 Cal.App.2d 659, 662 [46 Cal.Rptr. 491].)

In a subsequent appeal, the appellate court interpreted the will of John to permit proration of estate and inheritance taxes paid on gifts made in contemplation of death to the donees of said gifts. (*Estate of Cummings* (1968) 263 Cal.App.2d 661, 672 [69 Cal.Rptr. 792].)

After Ronald's resignation Nancy was appointed administratrix with the will annexed, Covert acting as her attorney. Her death left the estate without a representative. Ronald filed a petition for letters testamentary or, alternatively, for letters of administration with the will annexed. Cherilyn and Covert filed separate petitions for letters of administration with the will annexed. After a hearing and a conference in chambers, Ronald declined to act as executor and nominated Cherilyn to act with him as a co-administrator[1] with the will annexed. The court then made its order appointing Ronald and Cherilyn as co-administrators with the will annexed and denied Covert's petition. It is from this order that Covert appeals.

The following issues are raised upon this appeal: I. Does Covert have a higher priority under Probate Code section 422 than either Ronald or Cherilyn? II. Is Ronald ineligible for letters of administration because he previously resigned as executor? III. Is there such a conflict of interest between Ronald and the estate as to disqualify him from appointment as administrator? IV. Did the trial court abuse its discretion in appointing Ronald and Cherilyn co-administrators with the will annexed? We have concluded that each of these questions should be answered "no," and that the order appealed from should be affirmed.

## I.

 Covert contends that he is entitled to preference for appointment over Ronald and Cherilyn because he is a creditor entitled to attorney's fees for services rendered to the estate. Assuming, without deciding, that he is a class 9 creditor,[2] we do not agree. Probate Code sections 409 and 422[3] set forth the order of priorities.

The pertinent portion of section 409 provides: "Persons are entitled to appointment as administrators with the will annexed in the same order

---

[1] We use the masculine form for simplicity.

[2] Covert originally filed as a person in class 10, under Probate Code section 422, but later filed a supplement claiming to be the largest single creditor of the estate and hence falling into class 9. The trial court was of the opinion that he did not fall into class 9, interpreting the application of that classification as being limited to persons to whom the decedent was indebted.

[3] Hereafter all references to sections refer to sections of the Probate Code.

of priority as in the appointment of administrators, except that, one who takes under the will has priority over one who does not, and need not be entitled to succeed to the estate or some portion thereof under the law of succession."

The relevant portion of section 422 is as follows: "Administration of the estate of a person dying intestate must be granted to one or more of the following persons, who are entitled to letters in the following order, the relatives of the decedent being entitled to priority only when they are entitled to succeed to the estate or some portion thereof: . . . (2) The children. . . . (9) The creditors. (10) Any person legally competent."

 Covert appears to assume, without having established by proof, that Ronald is not "one who takes under the will" nor one entitled to succeed to any part of the estate because allegedly he will owe more to the estate when estate and gift taxes are prorated than he will receive from it. While this is a factor for the trial court to consider in the exercise of its discretionary powers, Covert has cited no authority which would make this factor cause for ipso facto disqualification. Ronald is a child of the testator and he has been named in the will as both a specific and residuary legatee. If the question were whether Ronald should be appointed an executor, the ground asserted by Covert would not be a cause for disqualification since it is not enumerated in section 401.[4] (*Estate of Daigh* (1963) 59 Cal.2d 367, 368-369 [29 Cal.Rptr. 273, 379 P.2d 761].) As we point out below, deference also should be given to the testator's nomination in selecting an administrator with the will annexed. Ronald is entitled to priority under section 422, subdivision (2), unless he has waived this priority because of his earlier resignation as executor, or unless he is unqualified for lack of integrity, or the nature of his interest is so incompatible with that of the estate that it is impossible to protect both interests at the same time. Short of irreconcilable conflict of interest, the court must generally appoint the one enjoying priority despite any technical adverse interest. (*Estate of Gibson* (1963) 222 Cal.App.2d 299, 300-301 [35 Cal.Rptr. 103].) If the person with the higher priority under section 422 is not disqualified, his appointment is mandatory. (Prob. Code, § 422; *Estate of Locke* (1968) 258 Cal.App.2d 617, 622 [65 Cal.Rptr. 884].)

Although Cherilyn does not enjoy priority under section 422 (*Estate of Selb* (1949) 93 Cal.App.2d 788, 791 [210 P.2d 45]), she has priority

[4]Probate Code section 401 provides in part: "No person is competent to serve as executor . . . who is under the age of majority, convicted of an infamous crime, or adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity. . . ."

over Covert as the nominee of Ronald (Prob. Code, § 423),[5] who, as we further explain below, is not disqualified. The case of *Estate of Sherman* (1936) 5 Cal.2d 730 [56 P.2d 230], is clearly distinguishable on the facts. As the very extract from the opinion cited by Covert discloses, the person purporting to make the nomination in that case was not one having any beneficial interest in the estate. Ronald is both a child and a legatee under the will.

## II.

█ Covert urges that Ronald's prior resignation as executor of the estate is a permanent bar to his subsequent appointment as administrator with the will annexed.

Ronald resigned only because there was a conflict of interest with the estate pending the determination of the incidents of the estate and gift taxes to be paid. The legal questions involved have now been resolved by the courts. (*Estate of Cummings, supra,* 263 Cal.App.2d 661.) He did not resign under pressure of any proceeding to be instituted against him under section 521. It appears that his resignation was dated July 15, 1964, and that his account was settled and approved pursuant to section 520 in January 1965.

Insofar as Covert personally is concerned, there is nothing about Ronald's resignation which constitutes any basis for a theory of estoppel as found by the court in *Estate of Grafmiller* (1938) 27 Cal.App.2d 253 [81 P.2d 181], cited by Covert. In *Grafmiller,* the executor submitted a written resignation to the court and then encouraged one named as an alternate executor in the will to file his application for appointment. Thereafter, he sought to retract his resignation and continue as executor. The court held his resignation had taken effect and that he "should not be allowed to . . . withdraw his resignation to the injury of [the person who was named as alternate executor] whom he had voluntarily led to file a petition for appointment, and that [he] should be estopped against interposing any objection to the appointment of [such person]." (At p. 259.)[6] Where no prejudice to Covert attributable to the resignation is shown, the resignation is not a bar vis-à-vis Covert. (Cf. *Estate of Fiddyment* (1946) 74 Cal.App.2d 72, 77 [168 P.2d 61].)

---

[5]Section 423 provides in part: "Administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request . . . of a child . . . . If the person making the request is a child, . . . the nominee shall have priority next after those in the class of the person making the request; . . ."

[6]The appellate court also held that the trial court erred in not removing the executor for his conduct bordering upon, if not actually being, a fraud upon the estate.

In *Estate of Robinson* (1924) 65 Cal.App. 588 [224 P. 765], the daughter of the decedent waived her right to appointment as administratrix and requested the court to appoint one Thomason, a nonrelative, as administrator with the will annexed. Subsequently, Thomason resigned, and another stranger, Matlock, was appointed to succeed Thomason. The daughter sought "to revoke Matlock's letters of administration in order that she might be appointed in his place. The sole ground of her petition [was] that she [had] a better right to act as administrator with the will annexed of said estate because she [was] a daughter of the decedent and because Matlock [was] not related to the decedent and was not nominated by [the] petitioner or any person entitled under the law to administer." (At p. 590.) The court held that while her waiver might be a basis of estoppel as against her nominee, as between her and Matlock the question of the right to appointment should be determined without regard to her previous waiver.[7]

The situation presented in the instant case is analogous to that in *Robinson*. The circumstances which prevailed at the time Ronald resigned no longer existed when the trial court determined whether Ronald or Covert should be appointed as administrator with the will annexed. Ronald's prior resignation is, therefore, no bar to his appointment as administrator.

### III.

■ Covert next contends that Ronald is not eligible for letters of administration because of a conflict of interest between him and the estate. As previously alluded to, this conflict concerns the moneys owed and to be paid to the estate by Ronald, his former wife, and Ronald's sister for their share of estate and gift taxes paid by the estate on gifts made in contemplation of death, when the precise amounts are finally determined. As previously noted, this is a factor to be considered by the court in exercising a discretionary power of appointment, but it is not an automatic bar.

■ The fact that a person nominated in a will as an executor has an

---

[7]See also Note, 153 A.L.R. 220, 235. Scope and effect of waiver or renunciation of right to administer decedent's estate, capsulizing *Re Dempsey* (1868) Tucker (N.Y.) 51. Letters of administration *de bonis non* were issued to one named as a coexecutor in the will but who had filed a renunciation when letters were issued to the other coexecutor, who died subsequent to his appointment. Retraction of the renunciation was permitted where the original renunciation was made because it was deemed unnecessary to have two executors act at the same time.

interest adverse to the estate does not in and of itself disqualify him for appointment as an administrator with the will annexed when the estate is left without a representative prior to completion of the administration. (Cf. *Estate of Daigh, supra,* 59 Cal.2d 367, 368-369, and cases cited.) In order to disqualify a person from acting as a representative of an estate due to a conflict of interest, his claim to property of the estate must be without sufficient reason or his conduct must evince a lack of integrity. (*Gross* v. *Needham* (1960) 184 Cal.App.2d 446, 462-463 [7 Cal.Rptr. 664].) ■ It also has been held that the simple fact that one named as an executor in a will owes money to the testator does not disqualify him from serving as executor. (*Estate of Dulfon* (1966) 243 Cal.App.2d 469, 473 [52 Cal.Rptr. 398].) In *Estate of Cole* (1966) 240 Cal.App.2d 324, 329 [49 Cal.Rptr. 419], the court stated: "While it is the duty of the courts carefully to protect the interests of estates, the rights of those who are appointed to take charge and manage them should not be overlooked. . . . A testator's selection of an executor should not be annulled except on the clear showing that the best interests of the estate require such action. . . ." On page 332, the court said: "A probate court should not defeat the will of a testator by removing his chosen executor for light or trivial causes and particularly for matters which are subject to ready adjustment in the settlement of accounts."

■ While the instant case does not involve Ronald's appointment as executor or his removal as an executor, the considerations to be weighed in those situations, as stated in the foregoing cases, apply with equal force here. Ronald was one nominated by the testator to be his executor; the conflict which existed at the time he earlier resigned as executor has been resolved; and the determination of what he must pay into the estate for his prorata share of the estate and gift taxes is something which the court must adjust in the settlement of accounts, whether or not Ronald is the representative of the estate. There is no exercise of any discretion by the administrator in the determination of these amounts.

In *Estate of Randall* (1918) 177 Cal. 363 [170 P. 835], the widow of the decedent who was named as executrix was unable to act as such under a then prevailing statute because of her absence from the state. A sister of the decedent was issued letters of administration with the will annexed. Upon the widow's return to the state, she sought to have the aforementioned letters of administration revoked and to have herself appointed as executrix. It was held immaterial to her appointment that she was then defending against a suit instituted against her by the administratrix.

In the instant case, Ronald appealed from the order involved in the

*Estate of Cummings, supra,* 236 Cal.App.2d 659, to settle a legal question and that determination has been made in *Estate of Cummings, supra,* 263 Cal.App.2d 661, 671-672, as previously noted. There is thus even less reason to disqualify Ronald than in the situation which prevailed in *Estate of Randall, supra.*

*Estate of Guzzetta* (1950) 97 Cal.App.2d 169 [217 P.2d 460], cited by Covert, is not apposite. There the administratrix with the will annexed was contesting the very will upon which her appointment was premised. The appellate court held merely that her removal in the exercise of the discretionary power of the court was not improper. "The propriety of making an order for the issuance of letters with the will annexed is dependent upon the establishment of a will apparently valid." (*Luckey* v. *Superior Court* (1930) 209 Cal. 360, 365 [287 P. 450].) The administratrix with the will annexed in *Guzzetta* sought to invalidate the will as she, mother of the decedent, would have inherited the entire estate in the event of intestacy. This is different from the situation where an administrator with the will annexed seeks only that to which he is entitled by a will duly admitted to probate. Ronald is not contesting the will and codicils admitted to probate; in fact, he was the one who petitioned for their probate.

## IV.

■■ Covert finally argues that the trial court abused its discretion in appointing Ronald and Cherilyn co-administrators with the will annexed. Where no priority exists, the court has discretion in deciding whom it should appoint between competent applicants. (Prob. Code, § 425; *Estate of Olcese* (1930) 210 Cal. 262, 270 [291 P. 193]; *Estate of Selb, supra,* 93 Cal.App.2d 788, 791-792.) However, in this case both Ronald and Cherilyn had priority over Covert for the reasons we have previously explained. As between Ronald and Cherilyn, the latter was appointed at the request of Ronald. Under such circumstances, there was no room to exercise discretion in the absence of a showing of disqualification of Ronald and Cherilyn (Prob. Code, § 422; *Estate of Locke, supra,* 258 Cal.App.2d 617, 622). At best the scope of discretion was very limited (*Estate of Gibson, supra,* 222 Cal.App.2d 299, 300-301). We find no merit to a claim of abuse of discretion advanced by Covert. Had he desired to affirmatively establish the disqualification of Cherilyn, he could have called her as a witness since she was present in court, but he chose not to do so. The burden of proving an abuse of discretion was upon him. (*Estate of Wamack* (1955) 137 Cal.App.2d 112, 115 [289 P.2d 871].) Since we uphold the order of the trial court upon the basis of priorities,

there is no need to return the cause to the trial court as requested by Covert.

## V.

The order appealed from is affirmed.

Kaus, P. J., and Reppy, J., concurred.